Senator Rader has absented himself briefly, but we can proceed with Paul v. United States 2010-2021. Mr. Regnier. Good morning, Your Honor. Richard Regnier for the plaintiff appellant. Our position in this case is that the Court of Federal Claims had subject matter jurisdiction pursuant to the Tucker Act as made specific by the money mandating statute section 6322 for the court leave with pay. Don't you need to go through the Beck Pay Act as well? We did plead that as well, Your Honor. In other words, as a matter of how you get from the cause of action to the Court of Federal Claims, it isn't enough, I take it, simply to say there's a statute that provides that people should be allowed to go on jury duty without losing their pay, but you need the Beck Pay Act to be the act that gives you the requirement that the government pay in addition to the Tucker Act, which gives jurisdiction to the Court of Federal Claims. Isn't that right? It's an essential component of the set of statutes that puts this claim in the All you need to get into the Court of Federal Claims is the Tucker Act and 6322, and that's the money mandating statute that opens the door to jurisdiction in the Court of Federal Claims. You can also plead a separate theory under the Beck Pay Act, also as made specific by the money mandating provisions of 6322. Didn't Fausto make that argument that all you need is the Beck Pay Act to let us challenge the rates at which we were, as attorneys, rated and that they were challenging in Fausto? Well, Fausto... Didn't they make the same argument and wasn't that somewhat rejected by the Supreme Court? Well, Your Honor, I couldn't divine all of the mental gymnastics and brilliance of Justice Scalia to recall all of the logic and reasoning that was in that decision. I do know that Fausto taught us that CSRA can knock out other issues if it involves an adverse personnel action. We didn't have an adverse personnel action in this case. There was strictly... Well, there was a removal. But that came later, Your Honor, 354 days after the court leave issue surfaced, and that was the fundamental error that occurred. But she appealed to the board, didn't she? To whom, sir? To the board, the Merit System Protection Board. As instructed by her employer. That was MSP2. She originally appealed when court leave was denied, and she brought an action before the MSPB, and they declined jurisdiction because court leave and AWOL were not issues covered by CSRA. Now, is it your position that the board does not have authority to grant her the relief with respect to the pay that she was denied during her employment tenure? That's correct, Your Honor. MSPB did not have jurisdiction over court leave entitlement. That belonged in the Court of Federal Claims, once OPM had issued a settlement letter saying that, in reversing its previous position when they advised the plaintiff, that she was absolutely entitled to court leave with pay while she served on the grand jury. And if any supervisor ordered it otherwise, that could be legally reversed. But they ultimately took the position that she was not entitled to court leave, I take it? Who took that? OPM, right? Ultimately. They ultimately took that position 10 months later. But the reasoning in that was fallacious, as we pointed out in a brief that's part of the record. Now, when you've got 6322, it is a ministerial act only on the part of the government to pay the money, provided that the plaintiff complied with the simple requirements. She's a federal employee. She was summoned by the court to serve for two years on the grand jury. And it was a judicial proceeding encompassed by 6322. She was summoned and volunteered for the second year. Is there any significance in that? No, Your Honor. As a matter of fact, the whole purpose of 6322 when it was enacted in 1940 by Congress was to provide a financial incentive for people to serve on juries and to provide a rich source of jurors for trial and grand juries. And this is a smokescreen, because Congress has never amended 6322 to say that if you volunteer, if you're a willing person on serving for a jury and you decline to declare something that might exempt you, you're entitled. But in this case, it's volunteering in the face of an order to show up for your federal job. Is that an additional complicating factor? Not at all, Your Honor. It was for the plaintiff, because ultimately she got fired. But the nub of that is they didn't have authority to issue that kind of an order. There is nothing in 7106 of management's rights that confers upon a supervisor the power to say, I don't care if you're under an existing court order, a summons. I'm ordering you to come back to work. You've been on a grand jury for a year, 10 days now. That's enough. And if you don't come back to work, we're going to treat you as AWOL. And the supervisor, and this is critical to this case, had no authority to issue that kind of an order. They have assumed all along that they had such power, and they didn't. And our briefs make it clear there's no authority for them to have done that. This all goes to the merits of her claim. It doesn't go to the question of whether the Court of Federal Claims has jurisdiction to decide this case, right? I'm sorry, I didn't quite hear you. That everything that you've been saying about her situation and the correctness, as you see it, of her actions and the incorrectness of the agency action all has to do with whether once she finds a tribunal to hear her claim, she should win. It doesn't address or answer, I take it, the question of whether the Court of Federal Claims is the appropriate tribunal in which to decide that question, correct? But our whole point is that the Court of Federal Claims was the proper tribunal. Well, but that's the question we have to decide. And that question doesn't depend on whether she's right or wrong about her reading of 6322, correct? I mean, it depends upon whether or not the Tucker Act, which we pleaded, as made specific by 6322, confers jurisdiction on the Court of Federal Claims. Right. And it does. But that's true without regard, if it does, it does without regard to whether she's right or wrong on the merits, right? In other words, you could be right about that the Court of Federal Claims gets this case to decide, but then you could lose in the Court of Federal Claims. You don't think you will if you get there, but you might. But the question, the only question for us to decide at this juncture is whether you get a shot in the Court of Federal Claims, right? That's the basic issue before you, although I believe you also have the power, because this case really boils down to a question of law. You have the power, because you've got the record in front of you, to say, you know, as a matter of fundamental justice here, and seeing what everything is, as a matter of justice and law, we're going to issue a judgment in favor of the plaintiff and remand it for specific monetary implementation as prayed for in the complaint. To the extent that the Back Pay Act is implicated here, do you believe that the Court of Federal Claims can be, and I'm looking now at section 5596B1, the pertinent section of the Back Pay Act, do you believe that the Court of Federal Claims can be an appropriate authority within the meaning of that statute to decide whether she's entitled to relief under 6322? I do, Your Honor. But the problem for you there, of course, is that Fausto, at least there is broad language in Fausto that suggests that the Court of Federal Claims is not an appropriate authority, and the only way you can get relief, at least in the context of Fausto-type claims, is by getting some other appropriate authority, whether the MSPB or OPM or somebody else, to decide the merits of the claim, and then going into the Court of Federal Claims, holding that decision and get an order directing the government to pay you. So the question is, why is this case different from Fausto? But Fausto doesn't say that everything comes under CSRA. It allows that there are some matters that are not covered, some matters that are not adverse personnel actions, and clearly this case was not an adverse personnel action. Well, here's the difficulty with the CSRA drawing the lines of what's covered by Fausto, for me at least. There are things that are not adverse personnel actions, such as a suspension for less than 14 days. By definition in the statute, that would not be an adverse personnel action, right? Okay. Nonetheless, it's quite clear from Fausto and from subsequent cases that if you are suspended for 10 days, you don't get to go to the Court of Federal Claims, even though it's not an adverse agency action. And the reason is, because what the Supreme Court said in Fausto is, the CSRA occupied the field and Congress decided two things. One, any appeal that is of an agency action, you go to the MSPB. Any lesser type of action, you have no right to any appeal anywhere other than with the agency itself. So the question for you, it seems to me, is, why isn't this case within that outer circle of no relief in any form? As would be the case, as I think you would agree, for somebody who had a 10-day suspension. They'd just be out of luck, right? They wouldn't be able to go to the Court of Federal Claims. You'd agree? I agree with that, Your Honor. So why is this case different from that one? But Fausto is addressing, for jurisdictional purposes, matters such as misconduct and misbehavior on the part of an employee. But the agency treated this as misconduct, which is disregarding an order and just not showing up. But it has to be a legitimate order, Your Honor. And it was not a legitimate order. But that goes to the merits. Well, it seems to me that way. You don't end up with jurisdiction because you're right in a particular tribunal. You end up with jurisdiction because that tribunal has the authority to decide whether you're right or wrong, right? Correct. So the fact that she may be right doesn't mean she gets to go to the Court of Federal Claims because of that. But we're in the Court of Federal Claims because of the subject matter of this case. And the subject matter here is borne out in the pleadings. The factual basis is what we have to look at under the law. And that gets back to 6322. And why is it clear that that's money mandating? Why is 6322 money mandated? Right. It simply says you're entitled to serve as a juror when called. And summoned. And if you serve, you're entitled to be put on court leave, authorized leave, and paid without any deductions on your pay and benefits. And that's what Congress had in mind. We want people to serve on juries. We want them to be willing. We want them to volunteer. And in order to encourage that, we're going to see that there's no financial hardship. Then a supervisor comes along with an invalid order and directly contravenes congressional intent and imposes what amounts to financial hardship on an employee by removing that person. You want to save me for your rebuttal time? Yes, Your Honor. Thank you, Mr. Begnier. Ms. Speck. May it please the court. Although it may seem otherwise, the parties agree about a lot of the major facts in this case. In page 7 of Ms. Hall's opening brief and in her complaint, she stated that she was removed because of her court leave. Because she was removed, she was subject to an adverse personnel action, which is subject to 5 U.S.C. 7512. When an employee is subject to an adverse personnel action that is covered under the MSPB's jurisdiction, then as this court has repeatedly held, the proper forum is the Merit Systems Protection Board and not the Court of Federal Claims. What about the AWOL before her removal? That's probably what you were asking. That's exactly the question. Well, in this case, the AWOL is directly related to her removal. Looking at the record, Ms. Hall, the MSPB could not have decided anything related to her removal without looking at the underlying court leave claim. Here, she was removed for three reasons. But why isn't that exactly the same situation as was true in Matter, in which this court held? Are you familiar with our decision in Matter? Yes, I am, Your Honor. You referenced the board's decision, but not our decision. Our court said in that setting that somebody who had been charged with misconduct, put on administrative leave for that misconduct, and ultimately fired for that misconduct, could not get any recovery for the losses suffered while on administrative leave because that was not the result of the removal. But that was after the court had already decided the removal action and reversed the removal action. In Matter, and I believe the employee had been charged with slapping an employee, then he was put on administrative leave, and then I believe the removal was overturned. Right, but he didn't get his administrative pay he would have gotten, but for the administrative leave. So my question to you is, where does she go to get her salary that she should have gotten, excuse me, according to her theory of the case, if she's entitled to that salary during the period that she was still employed? Where does she go? That is somewhat of a side issue, Your Honor. I think it's directly because you say in your brief that she gets that from the MSPB, and I think that's just squarely contrary to Matter. So if our decision turns to any extent on whether the MSPB can grant her that relief, it seems to me that's a central issue that we have to address. Well, Your Honor, it's really two issues. If you look at her complaint, she has asked for the year of back pay, and then she has also asked for the time since she was removed. So she's asked for $500,000, and $400,000 of that is clearly related to the time she was removed and after that. Because of the interrelationship, the court... Well, first of all, let me back up. Looking at the Dackman decision, which this court affirmed in an unpublished opinion, 230 Federal Appendix 981 in April 30, 2007. Judge Horne's decision? It was... Yes, sir. It was then affirmed by this court in April 30, 2007, albeit in an unpublished opinion, which did squarely agree with Judge Horne's reasoning in the Dackman case in the Court of Federal Claims. There, Ms. Dackman had been charged... I really want to get your answer to the question of where she goes for the first $100,000. Well, Your Honor, because of the interrelationship between the AWOL... The system has been set up under FALSTO so that when there is a removal action, the MSPB should, in effect, get the first cut. The MSPB has the jurisdiction. It cannot decide anything related to the removal action without looking at all of the court leave issues. And because of the system that turns on the MSPB's primacy in those situations, presumably, the court in previous... In other MSPR cases that were not cited in our briefs, has held that the agency can restore, in unique circumstances, can restore an employee's... The time prior to the employee's removal. Was it the Mattern case? It was not the Mattern case, but there are other cases that... By the board in Mattern. Do you have any post-Mattern cases in which they say that? This is the board... The issues that I could find where the court has actually addressed this were the latest one was 1989, which was Maki versus the United States Postal Service. Mattern is very much more recent than that. Let's get back to this question because I really haven't gotten an answer from you yet. I'm really... It's for me, at least, it's very important to know the answer to this question. Where does she go for the $100,000 of pay that she was deprived during the time she was in jury service and employed? Does she go to the Court of Federal Claims? Does she have a right to go to the Court of Federal Claims now or later? I don't believe that she has a right to go to the Court of Federal Claims because she first did not go to the MSPB who should... Otherwise, without that, then an employee would basically have the danger of different decisions and conflicting advice. Because of the interrelationship between these two claims and because she was removed, the MSPB should be the party that has the right to talk up to address the issue of whether she was properly removed from court leave, which necessarily implicates the underlying issues of court leave. Suppose she were not interested in getting her job back and didn't care about the back pay post-termination, but she didn't want to leave $100,000 on the table from the time that she was in jury service. So she didn't want to go to the MSPB and contest the removal. Does she, in those circumstances, still have to go to the MSPB and sort of go through this faux removal appeal? That's what the decision suggests in Dockman, which this court affirmed. Yeah, but let's see if that's the government's position that that's what she has to do. It is the position that because of the interrelationship, because her removal was fully part and parcel, and because of the system that's set up, it's not designed. At the time she filed her complaint, she had been removed. And based upon the system, then, that's been established through FALSTO and through this Civil Service Protection Board, it would seem that the two issues cannot be separated after the fact, which is what this court held in Dockman in affirming the Court of Federal Claims. Non-presidential. I'm sorry, sir? Non-presidential. No, sir. But nevertheless, fully four-fifths of her complaint is dealing with the $400,000 that she is dealing with the $400,000 after her removal. It's an extremely small portion. So does she still have the right to go to the board, or has she forfeited that? I believe at this point in time, she has forfeited the right. She did properly appeal her case, and then as the Court of Federal Claims noted, she requested that her appeal be removed and then did not take any steps to reinstate her appeal with the Merit Systems Protection Board. At that time, the agency had never opposed granting her full relief, or did not move to dismiss her claim at the Merit Systems Protection Board. How broad do you think the foreclosure from FALSTO is of actions for monetary relief by federal employees in the Court of Federal Claims? Obviously, FALSTO excludes things other than those things that are directly appealable to the MSPB, because you have the 10-day suspension case, which I think we all agree would not be something that could be taken to the Court of Federal Claims. But how about a claim that somebody was not given overtime pay? It would seem in this case, if Ms. Hall had not been removed, then she would have a case in the Court of Federal Claims. Oh, you think so? She would prevail. That's very important. You're saying that she would be able to go to the Court of Federal Claims if she had not been removed in this case? But she was removed, and the removal cannot be separated from the underlying court leave issue. Let's stay with that issue. Go ahead. Just let me catch one little point that kind of adds to this. She went to the MSPB. They dismissed her claim because she was just on AWOL. Should they have said at that point, well, we'll put this on hold and see if you're removed? Or did they make just an error? I'm sorry, who made the error? MSPB in dismissing her. At the time Ms. Hall filed her first appeal, the MSPB was correct that it did not have However, once she was removed, and when she filed the case in the Court of Federal Claims, she had been removed specifically for the issues directly related to AWOL, which the MSPB would have had to directly address in terms of fashioning any relief related to the removal, which is squarely within the MSPB's jurisdiction. Now, let's suppose that she had not been removed. And you are saying that she could have gone to the, under those circumstances, she could go to the to the CFC. The Gagan decision seems to suggest that. We certainly wouldn't say that she would prevail. But in this case, we're not just dealing with someone who was declared AWOL. In this case, we are dealing with someone who was removed. Removal emanated directly from the court leave and the AWOL, which all has to be directly addressed. By the Merit Systems Protection Board. I'm not sure I follow the second part of your answer. Again, if she had not been removed, she would be able to go to the Court of Federal Claims? I believe so, Your Honor. And would that action be an action in which her substantive right was established by 6322, but she had to implement it through the Back Pay Act, in your view, would she have to, in other words, use the Back Pay Act as the vehicle to get her into the Court of Federal Claims? Yes, Your Honor. Yeah. And so that means you're agreeing that the Court of Federal Claims would be an appropriate authority under their circumstances? Which are not the circumstances of this case. They may or may not be as far as legally significant circumstances are. But I think these are all important points. We need to make sure we understand exactly where the government is coming from on this. So you are not suggesting that the Court of Federal Claims is not an appropriate authority in a situation such as this, absent the removal? Yes, Your Honor. Okay. Now, can you give me a characterization of what you think is the outer limit of what Fausto preserves either to the MSPB or bars from the Court of Federal Claims, put it either way, from adjudicating by way of monetary claims of federal employees? How would you characterize the line that's drawn between what's Fausto precluded to the Court of Federal Claims and what can be brought in the Court of Federal Claims? I'm not sure to address every circumstance. How would you approach that problem? What is it that's key to making the decision about whether something falls within the precluded area or outside of it? Well, looking, for example, at the Worthington decision, Mr. Worthington was subsequently removed for performance-related issues, but he had a separate claim related to this compressed work schedule. Now, in that case, the two issues were entirely unrelated and would be irrelevant with the MSPB deciding his removal claim. However, if, for example, he had been fired because he had refused to, say, work the compressed work schedule, he had only said, I want to work nine to five versus eight to seven, then that would be the type of interrelationship that should be decided by the Merit Systems Protection Board. And then once he... Suppose he wins before the Merit Systems Protection Board, or if, in this case, just to make sure I see where you're coming from on this, if Ms. Hall should win, if she could reinstitute her claim before the Merit Systems Protection Board, and she won before the Merit Systems Protection Board, what happens to her $100,000? And do you think... Again, I want to make sure I understand. Do you think that the board has authority, notwithstanding Mattern, our decision in Mattern, the board has authority to grant that relief? Well, pursuant to 5 U.S.C. 1204, and pursuant to this Maki decision and some of the other cases, it suggests that in unique circumstances, the MSPB could... But that's the pre-Mattern case, right? Those are... I have not seen this... The board had previously been quite liberal about granting in Lavelle and Spalding, which you cite in your brief. But Mattern slammed the door, as far as I can see, on that. And in fact, in this court, the government argued for a pretty aggressive reading of Mattern, saying that if it's not directly caused by the particular appealable action in that case, and in this one, a removal, if the loss is not caused by the removal, it can't be within the Merit Systems Protection Board's authority to grant. So I'm a little hard-pressed to understand... It seems like you're backing away from that position. Well, Your Honor, I mean, even if this wasn't... We believe it is, but if it wasn't even with MSPB, there would certainly be a collateral estoppel effect. These issues have been litigated before the MSPB, and presumably the agency would not be in a position, being told that it was wrong to remove Ms. Hall for all of these reasons, would not be in a position to then back away from the back pay issues. So she could then go to the Court of Federal Claims, assuming the agency dug in its heels and said, sue us, she could go into the Court of Federal Claims to get relief? I assume there would be a collateral estoppel effect, so there wouldn't be as much for the Court of Federal Claims to decide in that case. There are no further questions. We respectfully request that the Court affirm the decision of the Court of Federal Claims in this case. Thank you, Ms. Speck. Mr. Regnier, you have a little over a minute remaining. Thank you, Your Honor. The Worthington case is very helpful here in telling us, and this very court decided that, that there is no statute, law, rule, or regulation which gives MSPB jurisdiction here and denies jurisdiction in the Court of Federal Claims. The plaintiff here was not absent. There is a difference here between this case and Worthington, isn't there? Because the AWOL issue here is the same as that for which she was removed, whereas in Worthington, it's a compressed schedule versus performance. But they found that the compressed schedule was a specific money-mandating statute that gave the Court of Federal Claims jurisdiction. And we say that's the same thing here with 6322. Justice Bryson asked if the MSPB could have granted relief to the plaintiff before she was removed. And they said no, they can't. Court leave is not covered, nor is AWOL. And they again declined it later on the second MSPB hearing. So we know that the situation in which the plaintiff presents to this court is not covered by CSRA. And that's what FAUSTO stands for as far as we're concerned in this case. In conclusion, the decision in this court, in returning it to the Court of Federal Claims has national consequences. Is court leave entitlement going to be treated as Congress intended? It's a ministerial act to be performed by a supervisor. It's not managerial discretion. And they overstepped their bounds here. And we ask this court to respectfully reverse what happened. Thank you. That concludes our hearing. All rise. The Honorable Court is adjourned from day to day.